-51-

a voluntary transfer of his interest in the Union Court Property to Schlossberg and Laliberte. Next, at the time of the transfer, the Debtor had incurred obligations elsewhere. As the Court noted *supra*, the Debtor experienced insolvency as far back as 2003. (Trustee Ex. No. 50, Amended Statement of Financial Affairs.) The Debtor's company, Platinum, owed payroll taxes in the sum of $140,000 to the Internal Revenue Service for the period of 2003-2004. (Trustee Ex. No. 50, Amended Schedule E.) In addition, he owed child support to Christine in the sum of $120,000 for the period 2000-2005. (*Id.*) The Debtor also owed "941 estimated taxes" in the amount of $250,000 for the period 2002-2004. (*Id.*) Hence, the Debtor had incurred obligations elsewhere at the time of the transfer of the Union Court Property to Schlossberg.

Further, the Court found *supra* that the Debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer. Finally, the Court finds that after the transfer, the Debtor failed to retain sufficient property to pay his indebtedness. The Debtor's February 2004 e-mail correspondence to Schlossberg indicated that he did not have any asset to pay his creditors. (Trustee Ex. No. 23.) In short, the Court finds that the Trustee demonstrated all of the requisite elements to establish a constructively fraudulent transfer.

Accordingly, the Court finds that the Trustee has demonstrated that the transfer of the Debtor's interest in the Union Court Property to Schlossberg constituted constructive fraud under § 160/5(a)(2) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and § 160/8(a)(1). Pursuant to § 550(a)(1) and § 160/9(b) of the UFTA, the Trustee may recover from Schlossberg, for the benefit of the Debtor's estate, the sums of $120,000 and $52,357.54, which represent the Debtor's interest in the Union Court Property.

-52-

### 7. Whether the Transfer of the Union Court Property Was Fraudulent Under 740 ILL. COMP. STAT. 160/6(a)

The Court finds that the Trustee has demonstrated all of the requisite elements to sustain a cause of action against Schlossberg under § 160/6(a) of the UFTA. First, the Trustee established that creditors' claims arose before the transfer of the Union Court Property. Specifically, the Debtor's Amended Schedule F shows unsecured debt in excess of $848,000. (Trustee Ex. No. 50, Amended Schedule F.) Many of those debts were incurred several years prior to the transfer of the Union Court Property. (*Id.*) Second, the Trustee established that a transfer was made of the Debtor's interest in the Union Court Property to Schlossberg. Third, as discussed *supra*, the Trustee demonstrated that the transfer was made without the Debtor receiving a reasonably equivalent value in exchange for the transfer. Finally, the Court determined previously that the Debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.

Thus, the Trustee has established all of the elements necessary to sustain a cause of action against Schlossberg under § 160/6(a) of the UFTA. Pursuant to § 160/9(b), the Court enters judgment against Schlossberg in the sums of $120,000 and $52,357.54 and in favor of the Trustee. The transfer of the Union Court Property is avoidable under § 544(b)(1) and § 160/8(a)(1). Under § 550(a)(1) and § 160/9(b) of the UFTA, the Trustee may recover from Schlossberg, for the benefit of the Debtor's estate, the sums of $120,000 and $52,357.54, which represent the Debtor's interest in the Union Court Property.

-53-

### 8. Whether the Transfer of the Union Court Property Was Fraudulent Under 740 ILL. COMP. STAT. 160/6(b)

Finally, the Court must determine whether the Trustee has established all of the

necessary elements to sustain a cause of action against Schlossberg under § 160/6(b) of the

UFTA. This cause of action must be filed within one year after the transfer was made. 740

ILL. COMP. STAT. 160/10(c). The Court finds that the Trustee failed to file this cause of action

within one year after the transfer was made. The Union Court Property was initially

transferred to Schlossberg and Laliberte in July of 2003. Thereafter, they transferred it to

Carlos in June of 2005. The Trustee filed the instant adversary proceeding in 2007, which

is more than one year after the transfer was made. Therefore, the Trustee may not sustain a

cause of action against Schlossberg under § 160/6(b) of the UFTA.

### C. Count III: 11 U.S.C. §§ 548(a) and 550(a)

Under Count III of the amended complaint, the Trustee alleges that within two years

of the filing of his bankruptcy petition, the Debtor transferred the Union Court Property to

Laliberte with the actual intent to delay, hinder, and defraud his creditors. The Trustee

asserts that the February 10, 2004 e-mail correspondence from the Debtor to Schlossberg

indicates that the Debtor entered into the Union Court Property transaction in order to

transfer his interest therein with the actual intent to hinder and defraud his creditors. The

Debtor allegedly retained possession and control of the Union Court Property while

concealing his real interest in that asset. According to the Trustee, the transfer of the Union

Court Property constituted a conveyance of substantially all of the Debtor's valuable assets,

and as a result, the Debtor became insolvent because the sum of his debts exceeded all of his

-54-

assets. The Trustee seeks a finding that the transfer of the Union Court Property from the Debtor to Laliberte was fraudulent under 11 U.S.C. § 548(a)(1)(A), (a)(1)(B)(ii)(I), (a)(1)(B)(ii)(III), and (a)(1)(B)(ii)(IV). In addition, the Trustee seeks to avoid the transfer of that property. Further, he requests the return of this estate asset or, in the alternative, a judgment in his favor for the benefit of the estate equal to the value of the property transferred pursuant to 11 U.S.C. § 550.

For the same reasons articulated with respect to Schlossberg under Count I of the amended complaint, the Court finds that the July 2003 transfer of the Union Court Property to Laliberte was not made within two years prior to the Debtor's bankruptcy filing. The Debtor filed a bankruptcy petition in October of 2005, which is twenty-seven months after the July 2003 transfer of the Union Court Property. Thus, the Trustee may not sustain a cause of action against Laliberte under § 548(a)(1)(A) or (B) because the transfer was not within the two years before the date of the bankruptcy filing. Therefore, the Court grants judgment in favor of Laliberte under Count III of the amended complaint.

**D.     Count IV: 740 ILL. COMP. STAT. 160/5 and 160/6 and 11 U.S.C. § 544**

Pursuant to Count IV of the amended complaint, the Trustee alleges that within four years of the date of the filing of his bankruptcy case, the Debtor transferred a valuable asset, namely, the Union Court Property, to Laliberte with actual intent to delay, hinder, and defraud his creditors to whom he was either indebted or became indebted shortly thereafter. The Trustee avers that in the February 10, 2004 e-mail correspondence to Schlossberg, the Debtor admitted that he transferred his interest in the Union Court Property with the actual intent to hinder and defraud his creditors. Further, the Trustee contends that the transfer to

-55-

Laliberte conveyed substantially all of the Debtor's valuable assets, and as a result, the Debtor became insolvent because the sum of this debts exceeded all of his assets. According to the Trustee, the Debtor retained possession and control of the Union Court Property while he concealed his real interest in this asset. The Trustee contends that the transfer of the Union Court Property to Laliberte was fraudulent under §§ 160/5 and 160/6 of the UFTA and should be avoided under § 544(b) to the extent necessary to satisfy the claims against the Debtor's estate pursuant to § 160/8.

For the same reasons set forth *supra* with respect to Schlossberg under Count II of the amended complaint, the Court finds that the transfer of the Union Court Property to Laliberte was both actually and constructively fraudulent under §§ 160/5(a)(1) and (2) and 160/6(a) of the UFTA. The Court must elaborate on two points with respect to Laliberte. First, the Court finds that the Debtor and Laliberte had a special relationship. Laliberte testified that he knew the Debtor prior to the Union Court Property transaction because they did business together. Laliberte stated that he sold packing to the Debtor for his company, Platinum. Second, for the same reasons articulated with respect to Schlossberg, the Court finds that Laliberte was an insider of the Debtor by virtue of the agreement between Schlossberg, Laliberte, and the Debtor, whereby Schlossberg and Laliberte purchased the Union Court Property with the intention of selling it back to the Debtor at a later date.

Thus, the Court finds that the transfer of the Union Court Property to Laliberte was both actually and constructively fraudulent under §§ 160/5(a)(1) and (2) and 160/6(a) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and § 160/8(a)(1). Pursuant to § 550(a)(1) and § 160/9(b), the Trustee may recover the Debtor's interest in the Union Court

-56-

Property from Laliberte or the value thereof for the benefit of the Debtor's estate. The Court awards judgment in the sums of $120,000 and $52,357.54 to the Trustee and against Laliberte, the entity for whose benefit the transfer was made.

**E.      Count V: 11 U.S.C. §§ 548(a) and 550(a)**

Under Count V of the amended complaint, the Trustee alleges that within two years of the date of the Debtor's bankruptcy filing, he transferred a valuable asset in the form of large shares of his equity in the Union Court Property out of his possession and into the possession of Carlos with the actual intent to delay, hinder, and defraud his creditors to whom he was either indebted or became indebted shortly thereafter. According to the Trustee, the transfer of the Union Court Property to Carlos conveyed substantially all of the Debtor's valuable assets, and as a result, the Debtor became insolvent because the sum of his debts then exceeded all of his assets at a fair valuation. The Trustee alleges that in spite of this transfer to Carlos, the Debtor retained possession and control of the Union Court Property while concealing his real interest in that asset. The Trustee seeks a finding that the transfer of the Debtor's interest in the Union Court Property to Carlos was fraudulent under § 548(a)(1)(A), (a)(1)(B)(ii)(I), (a)(1)(B)(ii)(III), and (a)(1)(B)(ii)(IV). In addition, the Trustee seeks to avoid the transfer of that Property. Further, he requests the return of this asset or, in the alternative, a judgment in his favor for the benefit of the estate equal to the value of the property transferred pursuant to § 550.

**1.      Whether the Transfer of the Union Court Property Was Fraudulent Under § 548(a)(1)(A)**

First, the Court will address the Trustee's claim that the transfer of the Union Court

-57-

Property by Schlossberg and Laliberte to Carlos constituted fraud in fact or actual fraud pursuant to § 548(a)(1)(A). There was no direct evidence that the transfer of the Debtor's interest in the Union Court Property by Schlossberg and Laliberte to Carlos was made with actual intent to hinder, delay, or defraud the Debtor's creditors. In February of 2004, over one year prior to the June 2005 transfer of the Union Court Property to Carlos, the Debtor wrote in an e-mail correspondence to Schlossberg that the articles of assignment for deed between the Debtor, Schlossberg, and Laliberte was a "great way" to protect his assets from his creditors. (Trustee Ex. No. 23.) The Trustee argues that this document demonstrates the Debtor's intent to hinder, delay, and defraud his creditors with respect to this June 2005 transfer to Carlos. Unfortunately, for the Trustee, while this e-mail correspondence shows the Debtor's intent to keep his assets from his creditors, it does not speak dispositively to the Debtor's intent at the time of the transfer over one year later. While this document constitutes strong evidence of the Debtor's overall scheme to hinder, delay, and defraud his creditors, the Court must also turn to the badges of fraud to determine whether the transfer was intended to harm the Debtor's creditors.

First, there was no evidence of the Debtor absconding with proceeds of the transfer because there were no proceeds. Rather, with the Debtor's knowledge and consent, Schlossberg and Laliberte transferred the Debtor's equity interest in the Union Court Property to Carlos and the Debtor retained possession and control of that Property. Next, there was no consideration given for the transfer of the Union Court Property. After the Debtor's initial transfer of the Union Court Property to Schlossberg and Laliberte, the Debtor consistently fell behind in his payments to them. The parties eventually agreed that the

-58-

articles of agreement for deed arrangement was not working. The Debtor found a substitute strawman for the Union Court Property–Carlos.

The documents at the June 8, 2005 closing on the sale from Schlossberg and Laliberte to Carlos indicated that the net proceeds of the sale equaled approximately $200,000, which included a transfer of $76,207 to Carlos, who did not have any funds of his own to purchase the Union Court Property. All of the money received by Carlos came directly out of the equity owing to the Debtor at the time of the sale of the Union Court Property. (Trustee Ex. No. 62 at 77:9-77:23.) However, the Debtor did not receive anything equivalent in value in exchange for transferring to Carlos his interest in the $76,207. Moreover, Schlossberg, Laliberte, and Christine also received payments out of the equity to which the Debtor was entitled pursuant to the Debtor's arrangement with the three of them. (Trustee Ex. No. 65 at 158:12-159:17.)

Prior to the June 8, 2005 transfer of the Union Court Property from Schlossberg and Laliberte to Carlos, the Debtor assigned his $200,000 interest in the Union Court Property to Christine in consideration for alleged outstanding child support payments. As a result, the Debtor received nothing in value from Christine in exchange for the transfer of his equity interest in the Union Court Property to her. On June 8, 2005, at the Debtor's direction, Christine then signed a release of option contract between herself and Schlossberg and Laliberte to free the title of the Union Court Property for sale.

Thus, the net effect of the Debtor's transactions is such that he masterminded the purchase and resale of the Union Court Property to two sets of strawmen who shielded this asset from the Debtor's creditors. This distribution of his equity through the previously

-59-

detailed payments to Schlossberg, Laliberte, Carlos, and Christine was without consideration paid by them to him for his equity in the Union Court Property. In the meantime, the Debtor remained in possession of the Union Court Property from the June 2005 closing until he once again stopped making his rent/mortgage payments to Carlos and moved out of the Union Court Property in the fall of 2005. Hence, there was a huge disparity in value between the property he transferred and the consideration received from them.

Further, Carlos, the transferee of the Union Court Property, was not an officer, agent, or creditor of an officer of a corporate transferor. Indeed, there was no special relationship between Schlossberg, Laliberte, and Carlos. Laliberte testified that he never met Carlos prior to the closing date. Finally, as discussed *supra*, the Debtor was balance-sheet insolvent when the transfer of the Union Court Property was made to Carlos in June of 2005, or he was rendered insolvent thereby.

In sum, four out of the six badges of fraud have been shown. Thus, the Court finds this is a sufficient number to infer actual fraud by the Debtor. Therefore, the Court finds that the Trustee has established by both clear and convincing evidence and by a preponderance of the evidence that the transfer of the Debtor's interest in the Union Court Property by Schlossberg and Laliberte to Carlos constituted actual fraud under § 548(a)(1)(A).

## 2.    Whether the Transfer of the Union Court Property Was Fraudulent Under § 548(a)(1)(B)

Next, the Court will address whether the transfer of the Union Court Property to Carlos was constructively fraudulent. In short, the Court finds that the Trustee demonstrated all of the requisite elements to establish a constructively fraudulent transfer.

-60-

First, the Court finds that Schlossberg and Laliberte made a transfer of the Debtor's continuing equity interest in the Union Court Property to Carlos. Next, the transfer was made on June 8, 2005, approximately four months prior to the Debtor's bankruptcy filing in October of 2005. Moreover, the Court found *supra* that the Debtor was insolvent when the transfer was made or was rendered insolvent thereby. Furthermore, as the Court already noted, after the transfer of the Debtor's interest in the Union Court Property to Carlos, the Debtor had already incurred debts that would be beyond his ability to pay as they matured. The Debtor's Schedules show that his monthly income at the time of his bankruptcy filing was $5,600 and his monthly expenses totaled $13,102. (Trustee Ex. No. 50, Amended Schedules I & J.) Further, the Debtor's unsecured debts totaled approximately $848,000 and his assets totaled $15,600. (*Id.* Amended Schedules F & B.) The Debtor's expenses far exceeded his income, and his assets were substantially less than his liabilities. Thus, the Court infers that after the transfer, the Debtor must have known that he would continue to incur debts beyond his ability to pay them as they matured.

Lastly, the Court must determine whether the Debtor received consideration from Carlos that had a value that was reasonably equivalent to the value of the Union Court Property. The Court finds that based on the evidence adduced at trial, the Debtor did not receive a reasonably equivalent value for the transfer of his interest in the Union Court Property to Carlos. The Court will examine the factors utilized to make this determination. *See Barber*, 129 F.3d at 387.

As previously discussed, the net proceeds of the resale of the Union Court Property were $200,000. Moreover, the Court also found *supra* that on the resale of the Union Court

-61-

Property to Carlos, Carlos received $76,207 of the Debtor's additional equity in the Property.

The Debtor did not receive any of the proceeds from the resale of the Union Court Property

to Carlos. Thus, the Court finds that the Debtor did not receive a reasonably equivalent value

for the transfer of his equity interest in the Union Court Property to Carlos.

Additionally, the Court finds that the transaction did not take place at arm's length.

Carlos purchased the Union Court Property without using any funds of his own. Indeed,

Carlos received a windfall of $76,207 of the Debtor's equity in the Union Court Property.

Further, the Court finds that the fact that Carlos purchased the Union Court Property without

any funds of his own demonstrates a lack of good faith on his part. After all, Carlos admitted

at trial that he thought the deal was too good to be true. Based on these factors, the Court

concludes that the consideration that the Debtor received from Carlos did not have a value

that was reasonably equivalent to the value of the Debtor's equity interest in the Union Court

Property.

In sum, the Court finds that the Trustee has met all of the elements to establish that

the transfer of the Debtor's interest in the Union Court Property by Schlossberg and Laliberte

to Carlos was constructively fraudulent under § 548(a)(1)(B). Thus, the Trustee may avoid

the transfer of the Union Court Property by Schlossberg and Laliberte to Carlos.

### 3.    Recovery Under 11 U.S.C. § 550(a)

The Trustee seeks an order under § 550(a) allowing him to recover the Union Court

Property from Carlos or, in the alternative, entering a judgment in favor of the Trustee for

the benefit of the Debtor's estate equal to the value of the Debtor's interest in the transferred

-62-

asset. The Trustee alleges in the amended complaint that Carlos was an initial, immediate, or mediate transferee of the Union Court Property.

The Court finds that Carlos was not the initial transferee of the Union Court Property. Rather, Schlossberg and Laliberte were the initial transferees of the Property when it was first sold on July 23, 2003 because they had dominion over and control of the Union Court Property. *See Bonded Fin.*, 838 F.2d at 893. The subsequent June 8, 2005 transfer of the Debtor's interest in the Union Court Property by Schlossberg and Laliberte to Carlos makes Carlos an immediate or mediate transferee of the initial transferees. Under § 550(a)(2), an immediate or mediate transferee is "one who takes in a later transfer down the chain of title or possession." *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir. 1992). The Court finds that Carlos was the immediate or mediate transferee of Schlossberg and Laliberte, the initial transferees. Title to the Union Court Property was transferred to Carlos in June of 2005 after the Debtor transferred his interest in that asset to Schlossberg and Laliberte in July of 2003.

Accordingly, the Court grants judgment in favor of the Trustee and against Carlos under Count V of the amended complaint. The Court finds that the transfer of the Debtor's interest in the Union Court Property from Schlossberg and Laliberte to Carlos was a fraudulent conveyance under § 548(a)(1)(A) and (B). As such, the transfer is avoidable under § 544(b)(1). Pursuant to § 550(a)(2), the Trustee may recover from Carlos, for the benefit of the Debtor's estate, the sum of $76,207, which represents the value of the Debtor's interest in the proceeds distributed to Carlos from the sale of the Union Court Property.

-63-

F.   **Count VI: 740 ILL. COMP. STAT. 160/5 and 160/6 and 11 U.S.C. § 544**

Lastly, under Count VI of the amended complaint, the Trustee alleges that within four years of the date of the filing of his bankruptcy case, the Debtor transferred a valuable asset in the form of large shares of his equity in the Union Court Property to Carlos with actual intent to delay, hinder, and defraud his creditors to whom he was either indebted or became indebted shortly thereafter.   The Trustee avers that the transfer to Carlos conveyed substantially all of the Debtor's valuable assets, and as a result, the Debtor became insolvent because the sum of his debts exceeded all of his assets.   According to the Trustee, the Debtor retained possession and control of the Union Court Property while he concealed his real interest in this asset. The Trustee contends that the transfer of the Union Court Property to Carlos was fraudulent under §§ 160/5 and 160/6 of the UFTA and should be avoided under § 544 to the extent necessary to satisfy the claims against the Debtor's estate pursuant to § 160/8.

   1.   **Whether the Transfer of the Union Court Property Was Fraudulent Under 740 ILL. COMP. STAT. 160/5(a)(1)**

First, the Court will address the Trustee's claim that the transfer of the Debtor's interest in the Union Court Property to Carlos constituted fraud in fact or actual fraud pursuant to § 160/5(a)(1) of the UFTA. There was no direct evidence of the Debtor's intent at the time of the transfer of the Union Court Property to Carlos on June 8, 2005. However, in a February 2004 e-mail correspondence to Schlossberg, the Debtor acknowledged his intent to protect his assets from his creditors. (Trustee Ex. No. 23.) The Court finds that this transaction constitutes yet another attempt by the Debtor to protect and hide his assets from

-64-

his creditors. The transfer was effectuated by Schlossberg and Laliberte, strawmen, to another strawman, Carlos. Unfortunately for the Trustee, however, this e-mail correspondence in and of itself does not demonstrate actual fraud at the time of the June 2005 transfer of the Union Court Property to Carlos.

Because there is rarely direct evidence of the intent underlying a transfer of property, courts look to circumstantial evidence in determining whether a transfer was intended to hinder, delay, or defraud creditors. At this point, it is helpful to analyze the evidence in terms of the eleven "badges of fraud," many of which are present in this matter.

First, the Debtor did retain possession of the Union Court Property after the transfer. He resided in the Property with Christine and their children until the fall of 2005 when he could no longer make the mortgage/rent payment to Carlos. Next, the transfer was recorded, but the side agreements whereby Christine received proceeds from the sale and turned them over to Laliberte and Carlos were concealed. In this deal, the initial straw buyers, Schlossberg and Laliberte, sold the Union Court Property to another straw buyer, Carlos, in order to shield the Debtor's equity therein from his creditors. Further, evidence was adduced to show that at the time of the transfer, the Debtor and his company, Platinum, were involved in litigation with AgriStar. Several judgments had been entered against the Debtor as evidenced by his Schedules. One of those judgments was the result of PACA litigation, for which the Debtor was potentially personally liable. Moreover, the transfer occurred shortly before or shortly after substantial debt was incurred by the Debtor. In addition, Schlossberg and Laliberte's transfer of the Debtor's equity interest in the Union Court Property to Carlos amounted to substantially all of the Debtor's assets. The Debtor's Schedules show that he

-65-

did not own any real property approximately four months after the transfer, and he listed personal property valued at $15,600. (Trustee Ex. No. 50, Amended Schedules A & B.)

The transfer of the Union Court Property on June 8, 2005 was made by Schlossberg and Laliberte, business associates and partners of the Debtor, to Carlos. The Debtor testified that he met Carlos prior to this transaction when he was working for MidAmerica Bank as a loan officer. The Debtor went to Carlos' real estate office in order to solicit business from him. It is undisputed that Carlos was neither a relative nor a partner of the Debtor. Thus, the Court finds that Carlos was not an insider of the Debtor, and the transfer by Schlossberg and Laliberte to Carlos was not to an insider.

Further, the Court previously determined that the Debtor was insolvent at the time or became insolvent shortly after the transfer was made. The Debtor removed and concealed assets and even admitted to forging Christine's name to documents. Lastly, the Court also found that the value of the consideration received by the Debtor was not reasonably equivalent to the value of the Debtor's interest in the Union Court Property.

In short, it appears that most of the badges of fraud are present here. Therefore, the Court finds that the Trustee has demonstrated that the transfer of the Debtor's equity interest in the Union Court Property by Schlossberg and Laliberte to Carlos was made with actual intent to hinder, delay, or defraud the Debtor's creditors. Because § 548 of the Code and § 160/5 of the UFTA are analogous, the findings with respect to §548(a)(1)(A) apply equally to the requirements of § 160/5(a)(1). *See Spatz*, 222 B.R. at 164; *Randy*, 189 B.R. at 443. Hence, for the same reasons articulated pursuant to § 548(a)(1)(A), the Court finds that the Trustee established that the transfer of the Debtor's equity interest in the Union Court

-66-

Property by Schlossberg and Laliberte to Carlos constituted actual fraud under § 160/5(a)(1)

of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and § 160/8(a)(1). Under

§ 550(a)(2) and § 160/9(b)(2) of the UFTA, the Trustee may recover from Carlos, for the

benefit of the Debtor's estate, the sum of $76,207, which represents the value of the Debtor's

interest in the Union Court Property.

### 2. Whether the Transfer of the Union Court Property Was Fraudulent Under 740 ILL. COMP. STAT. 160/5(a)(2)

Next, the Court must determine whether the transfer of the Debtor's interest in the

Union Court Property to Carlos was constructively fraudulent under § 160/5(a)(2) of the

UFTA. Under this alternate theory, the Trustee must show that Schlossberg and Laliberte

made a transfer of the Debtor's interest in the Union Court Property to Carlos without the

Debtor receiving a reasonably equivalent value in exchange for the transfer, and that the

transfer rendered the Debtor insolvent.

The Court finds that the Trustee has met all of the elements to establish a cause of

action against Carlos under § 160/5(a)(2). Because § 548 of the Code and § 160/5 of the

UFTA are analogous, the findings made with respect to § 548(a)(1)(B) apply equally to the

requirements of § 160/5(a)(2). *Id.* Thus, for the same reasons articulated *supra* with respect

to § 548(a)(1)(B), the Court finds that the Trustee has demonstrated that the transfer of the

Debtor's interest in the Union Court Property by Schlossberg and Laliberte to Carlos was

constructively fraudulent under § 160/5(a)(2) of the UFTA. As such, the transfer is

avoidable under § 544(b)(1) and § 160/8(a)(1). Under § 550(a)(2) and § 160/9(b)(2) of the

-67-

UFTA, the Trustee may recover from Carlos, for the benefit of the Debtor's estate, the sum

of $76,207, which represents the value of the Debtor's interest in the Union Court Property.

### 3.    Whether the Transfer of the Union Court Property Was Fraudulent Under 740 ILL. COMP. STAT. 160/6(a)

Next, the Court finds that the Trustee has demonstrated all of the requisite elements

to sustain a cause of action against Carlos under § 160/6(a). First, the Trustee established

that creditors' claims arose before the transfer by Schlossberg and Laliberte of the Debtor's

interest in the Union Court Property to Carlos. Specifically, the Debtor's Amended Schedule

F lists unsecured debt in excess of $848,000. (Trustee Ex. No. 50, Amended Schedule F.)

Many of those debts were incurred by the Debtor several years prior to the transfer of the

Union Court Property in June of 2005. (*Id.*) Second, the Trustee established that a transfer

was made by Schlossberg and Laliberte, strawmen of the Debtor, of the Debtor's interest in

the Union Court Property. Third, as discussed *supra*, the Trustee demonstrated that

Schlossberg and Laliberte made the transfer without the Debtor receiving a reasonably

equivalent value in exchange for the transfer. Finally, the Court determined previously that

the Debtor was insolvent at the time of the transfer or became insolvent as a result of the

transfer.

Therefore, the Trustee has established all of the element necessary to sustain a cause

of action against Carlos under § 160/6(a) of the UFTA. The Court enters judgment against

Carlos in the sum of $76,207 and in favor of the Trustee. The transfer of the Union Court

Property by Schlossberg and Laliberte to Carlos is avoidable under § 544(b)(1) and §

160/8(a)(1). Under § 550(a)(2) and § 160/9(b)(2), the Trustee may recover from Carlos, for

-68-

the benefit of the Debtor's estate, the sum of $76,207, which represents the value of the

Debtor's interest in the proceeds distributed to Carlos from the resale of the Union Court

Property.

### 4. Whether the Transfer of the Union Court Property Was Fraudulent Under 740 ILL. COMP. STAT. 160/6(b)

Finally, the Court must determine whether the Trustee has established all of the

necessary elements to sustain a cause of action against Carlos under § 160/6(b) of the UFTA.

This cause of action must be filed within one year after the transfer was made. 740 ILL.

COMP. STAT. 160/10(c). The Court finds that the Trustee failed to file this adversary

proceeding within one year after the transfer of the Union Court Property was made to

Carlos. The Union Court Property was transferred to Carlos by Schlossberg and Laliberte

in June of 2005. The Trustee filed the instant adversary proceeding in 2007, which is more

than one year after the transfer was made. Therefore, the Trustee may not sustain a cause of

action against Carlos under § 160/6(b) of the UFTA.


### IV. CONCLUSION

For the foregoing reasons, the Court grants judgment in favor of the Trustee and

against Schlossberg under Count I of the amended complaint. The Court finds the transfer

of the Debtor's interest in the Tunbridge Property to Schlossberg was a fraudulent

conveyance under § 548(a)(1)(A) and (B). As such, the transfer is avoidable under §

544(b)(1). Under § 550(a)(1), the Trustee may recover from Schlossberg, for the benefit of

the Debtor's estate, the sum of $109,000 for the fraudulent transfer of the Tunbridge

-69-

Property, which represents the value of the Debtor's interest in that Property received by Schlossberg.

In addition, the Court grants judgment in favor of the Trustee and against Schlossberg pursuant to Count II of the amended complaint. The Court finds that the transfers of the Debtor's interests in the Union Court Property and the Tunbridge Property to Schlossberg were fraudulent conveyances under §§ 160/5(a)(1) and (2) and 160/6(a) of the UFTA. As such, the transfers are avoidable under § 544(b)(1) and § 160/8(a)(1). Pursuant to § 550(a)(1) and § 160/9(b) of the UFTA, the Trustee may recover from Schlossberg, for the benefit of the Debtor's estate, the sums of $120,000 and $52,357.54, which represent the value of the Debtor's interest in the Union Court Property, and $109,000, which represents the value of the Debtor's interest in the Tunbridge Property received by Schlossberg. Under § 550(d), the Trustee is limited to only a single satisfaction from Schlossberg pursuant to Counts I and II of the amended complaint.

With respect to Count III of the amended complaint, the Court grants judgment in favor of Laliberte and against the Trustee. The Court finds that the transfer of the Debtor's interest in the Union Court Property to Laliberte was outside the two-year period under § 548(a)(1)(A) and (B).

Under Count IV of the amended complaint, the Court grants judgment in favor of the Trustee and against Laliberte. The Court finds that the transfer of the Debtor's interest in the Union Court Property was a fraudulent conveyance under §§ 160/5(a)(1) and (2) and 160/6(a) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and § 160/8(a)(1). Pursuant to § 550(a)(1) and § 160/9(b) of the UFTA, the Trustee may recover from Laliberte,

-70-

for the benefit of the Debtor's estate, the sums of $120,000 and $52,357.54, which represent the value of the Debtor's interest in the Union Court Property received by Laliberte.

With respect to Count V of the amended complaint, the Court enters judgment in favor of the Trustee and against Carlos. The Court finds that the transfer of the Debtor's interest in the Union Court Property to Carlos was a fraudulent conveyance under § 548(a)(1)(A) and (B). As such, the transfer is avoidable under § 544(b)(1). Pursuant to § 550(a)(2), the Trustee may recover from Carlos, for the benefit of the Debtor's estate, the sum of $76,207, which represents the value of the Debtor's interest in the proceeds distributed to Carlos from the sale of the Union Court Property.

Finally, the Court grants judgment in favor of the Trustee and against Carlos pursuant to Count VI of the amended complaint. The Court finds that the transfer of the Union Court Property to Carlos was a fraudulent conveyance under §§ 160/5(a)(1) and (2) and 160/6(a) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and § 160/8(a)(1). Pursuant to § 550(a)(2) and § 160/9(b)(2) of the UFTA, the Trustee may recover from Carlos, for the benefit of the Debtor's estate, the sum of $76,207, which represents the value of the Debtor's interest in the proceeds distributed to Carlos from the sale of the Union Court Property. Under § 550(d), the Trustee is entitled to only a single satisfaction from Carlos pursuant to Counts V and VI of the amended complaint.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

-71-

**ENTERED:**

DATE: ___6/3/8___

John H. Squires
United States Bankruptcy Judge

cc:  See attached Service List

## SERVICE LIST

### David E. Grochocinski v. David Schlossberg, Gary Laliberte, Christine Eckert and Marcelo Carlos
**Adversary Case No. 07 A 00450**

Neal H. Levin, Esq.
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, Il 60606

Mazyar M. Hedayat, Esq.
M. Hedayat & Associates, P.C.
425 Quadrangle Drive, Suite 101
Bolingbrook, IL 60440

David E. Grochocinski, Esq.
Grochocinski Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60462

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604